# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROWLAND J. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-1281 (KBJ) |
| | ) | |
| U.S. EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Rowland J. Martin ("Martin" or "Plaintiff") has brought this case challenging the termination of his employment as a teacher at a charter school in San Antonio, Texas, following an altercation with a student. Martin, a black male, alleges that he was fired due to his race and gender, and his complaint asserts a variety of claims against a number of different defendants. Specifically, Martin has sued the operator of the school at which he worked (Youth Empowerment Services ("YES")), the CEO of YES (Claudette Yarbrough ("Yarbrough")), and a staffing agency YES used (G&A Partners, Inc. ("G&A")). Against those three defendants, Martin alleges employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2000e-17, and common law breach of contract. Martin also brings claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681–1681x, and under 42 U.S.C. § 1983 against G&A and TALX, Inc. ("TALX"), a company that provides employment registry services, based on his assertion that G&A reported the circumstances of Martin's firing to TALX, and TALX in turn reported that information to the Texas

1

Workforce Commission.  Martin additionally asserts three claims against the Equal Employment Opportunity Commission ("EEOC") based on allegations that that agency made errors in handling his discrimination case, and he asks the Court to issue both (1) a writ of mandamus directing the EEOC to reconsider his claim, and (2) a declaration that the EEOC's actions violated the First Amendment and the "standards and limitations" clause found in 42 U.S.C. § 2000e-12(a).  Martin also alleges that the EEOC responded improperly to a Freedom of Information Act ("FOIA") request that he submitted to that agency seeking documents related to the handling of his case.

Before the Court at present is a plethora of motions from the parties, many of which are duplicates.  Of particular note are the EEOC's original and supplemental motions requesting the dismissal of Martin's non-FOIA claims against it for failure to state a claim upon which relief can be granted and the entry of summary judgment in its favor on Martin's FOIA claim.  (ECF Nos. 20, 37.)  Also noteworthy are the original and supplemental motions that Defendants G&A and TALX have filed seeking to dismiss the case on grounds of improper venue or, in the alternative, to transfer the case to the Western District of Texas – San Antonio Division.  (ECF Nos. 9, 35 (G&A); 13, 36 (TALX).)

Upon careful consideration of the various motions and associated submissions from the parties, the entire record, and the applicable law, and for the reasons discussed below, the Court **GRANTS** the EEOC's motion to dismiss the non-FOIA claims against it and **ENTERS SUMMARY JUDGMENT** in favor of the EEOC on the FOIA claim. The Court also **GRANTS** Defendants G&A and TALX's motions to dismiss or transfer, and accordingly **TRANSFERS** the remaining claims, including those against defendants

YES and Yarbrough, to the U.S. District Court for the Western District of Texas – San Antonio Division. In light of this disposition, the Court **DENIES** without prejudice all other pending motions in the case, so that the parties may re-file them, if they so desire, after the case is transferred. A separate order consistent with this opinion will follow.

## I. BACKGROUND FACTS

On August 18, 2010, YES hired Martin to teach at Higgs Carter King Gifted and Talented Academy ("Higgs Academy"), a charter school in San Antonio, Texas, that YES operates. (Complaint ("Compl."), ECF No. 1, ¶¶ 5, 17.) Martin additionally entered into an employment contract with G&A, a business that is headquartered in Houston and that provided staffing for the school. (*Id.* ¶¶ 6, 70.) Martin was hired with the title of "Director of Staff," but allegedly was never given a specific position description and was assigned to classroom teaching duties. (*Id.* ¶ 14.) Martin alleges that white employees hired with similar "director"-level job titles were given position descriptions and were assigned duties within that description. (*Id.* ¶¶ 17-18.)

The complaint asserts that this disparate treatment led to strained relations between Martin and his supervisors, and that "the situation boiled over" on November 9, 2010. (*Id.* ¶ 19.) On that day, Martin was involved in a classroom incident in which a student allegedly insulted Martin and in response Martin physically removed the student from his classroom. (*Id.*) Martin claims that his conduct conformed to school policies, but two days later, on November 11, 2010, defendant Yarbrough fired him. (*Id.* ¶¶ 20, 22.) Martin alleges that this decision was the result of gender and racial discrimination. (*Id.* ¶¶ 45-46.)

According to the complaint, at some point thereafter (between mid-December of 2010 and early January of 2011), G&A reported the circumstances of Martin's firing to TALX, an organization that the complaint alternately identifies as a credit reporting agency and an employment registry and data bank.  (Compl. ¶ 27.)  TALX has its headquarters in St. Louis, Missouri, and conducts operations in San Antonio.  (*Id.* ¶7.)  Martin alleges that TALX communicated the information it had received from G&A to the Texas Workforce Commission (the "Workforce Commission"), resulting in Martin's having difficulty claiming unemployment benefits.  (*Id.* ¶ 28.)

In May of 2011, Martin filed a charge with the Workforce Commission, alleging that he had faced discriminatory terms of employment from August to November of 2010, during his employment with YES.  (*Id.* ¶ 9.)  On or about March 30, 2012, the Workforce Commission transferred its investigation to the EEOC at Martin's request.  (*Id.* ¶ 35.)  On April 30, 2012, the San Antonio field office of the EEOC issued Martin a right-to-sue notice.  (*Id.* ¶¶ 10, 35.)

On May 10, 2012, shortly after receiving his right-to-sue notice, Martin submitted a FOIA request to the EEOC's San Antonio field office, requesting 10 categories of documents related to his case.  (*Id.* ¶ 11, Ex. J.)  The EEOC office granted in part and denied in part Martin's request on June 7, 2012.  (*Id.*)  Martin appealed the partial denial to EEOC's office of legal counsel in Washington, D.C., and his appeal was denied on July 30, 2012.  (Plaintiff's Supplemental Complaint ("Supp. Compl."), ECF No. 4, at 2.)

## II. PROCEDURAL HISTORY

### A. Martin's Original and First Supplemental Complaints

On July 30, 2012, Martin filed his first complaint in this court, alleging eight claims against YES, Yarbrough, G&A, TALX, and the EEOC. (*See generally* Compl.) Martin filed a supplemental complaint on December 12, 2012, adding a FOIA claim pursuant to 5 U.S.C. § 552. (*See generally* Supp. Compl.) Significantly, neither of Martin's complaints specifically identifies which of the claims are alleged against which defendants. However, the specific allegations underlying each of Martin's claims reveals the defendants against which Martin directs each claim.

To begin with, Martin asserts three claims against the EEOC. In the "First Claim For Relief" in Martin's initial complaint,[1] Martin asks the Court to issue a writ of mandamus to compel the EEOC to investigate his discrimination charge further.[2] (Compl. ¶¶ 47-53.) Second, in the Eighth Claim of the initial complaint, Martin asks the Court to issue a declaration that his EEOC charge was speech that the First Amendment protects, and that the EEOC's investigation was improper insofar as it violated the "standards and limitations" clause found in 42 U.S.C. § 2000e-12(a). (*Id.* ¶¶ 80-82, 89-90.)[3] Both the First Claim and the Eighth Claim are based on Martin's allegations that, in investigating his charge, the EEOC looked only at his claim of *racial* discrimination, while failing to consider an additional claim of gender discrimination that Martin maintains was included in the charge. (*Id.* ¶ 51.) According

---

[1] The complaint does not list counts; rather, each claim is numbered and entitled as a "claim for relief."

[2] In the parlance of the EEOC, a "charge" is an administrative complaint requesting an EEOC investigation.

[3] The paragraph numbering in Martin's complaint omits paragraphs numbered 83-88.

to Martin, the EEOC disposed of his charge in a manner contrary to an administrative policy prohibiting such "claim splitting," which the EEOC articulated in a recently decided administrative appeal, *Macy v. Holder*, EEOC Appeal No. 0120120821, 2012 WL 1435995 (E.E.O.C. Apr. 20, 2012). (*Id.* ¶¶ 51, 81.) Thus, Martin seeks to have the agency re-investigate his charge in a manner consistent with the holding in *Macy*.

The third claim that Martin directs at the EEOC—which he refers to as the Ninth Claim of his complaint—is contained in a three-page document that Martin has labeled "Plaintiff's Supplemental Complaint." Martin alleges that the EEOC failed to comply adequately with his FOIA request for documents related to its investigation of his charge. (Supp. Compl. at 1-3.)[4] While not a model of clarity, Martin's supplemental complaint makes it sufficiently clear that his Ninth Claim contests the EEOC's use of FOIA Exemption 5, 5 U.S.C. § 552(b)(5), in withholding certain material otherwise responsive to these requests. (*Id.* at 2.)

As for his remaining claims, Martin has withdrawn one, and appears to assert each of the other claims against various combinations of the remaining defendants.[5] The Third Claim of the original complaint alleges a "malicious and reckless disregard of the Plaintiff's Fourteenth Amendment rights" (Compl. ¶ 58), and seeks injunctive

---

[4] Specifically, Martin alleges that "the EEOC improperly denied [his] FOIA appeal from the prior withholding of information that [he] requested in Items #3 and #7 of his FOIA request[.]" (Suppl. Compl. at 2.) Item number 3 in Martin's FOIA request had asked for "[a]ny and all original work product of Investigator Minerva Melendrares explaining the decision to apply dismissal at intake procedures," while item number 7 had requested any "EEOC directives, regional or local operating guidelines, relied upon to conclude that dismissal at intake . . . was permissible[.]" (Compl. Ex. J (Martin's May 10, 2012 FOIA Request).)

[5] In total, there are five additional claims against defendants other than the EEOC: the Third, Fourth, Fifth, Sixth, and Seventh Claims of the original complaint. The portion of the original complaint that is contained within a section captioned "Second Claim For Relief," and that is subtitled "Motion for Stay of Proceedings on the Sixth Claim for Relief," (*see* Compl. ¶¶ 54-56.), appears to request a stay of any proceedings related to Martin's claim of unlawful employment practices. In his Supplemental Complaint, Martin indicates that he is withdrawing the request for a stay that comprises the Second Claim of his original complaint. (*See* Supp. Compl. at 3.)

and declaratory relief pursuant to 42 U.S.C. § 1983, based upon G&A's reporting of Martin's termination to TALX and TALX's subsequent publishing of that information (Compl. ¶ 59-61); accordingly, this claim appears to be asserted against only those two defendants.  Similarly, Martin's Fourth Claim implicates both G&A and TALX insofar as it alleges that these two companies violated the FCRA when they reported and published inaccurate information regarding Martin's discharge.  (Compl. ¶¶ 63-67.) The Fifth Claim of Martin's original complaint alleges breach of contract based on the theory that, by firing Martin for discriminatory reasons, Martin's employers breached his employment contract.  Because this claim necessarily implicates only those defendants who played a part in Martin's hiring and employment, Martin apparently asserts the Fifth Claim against Yarbrough, YES, and G&A.  (Compl. ¶¶ 68-73.) Similarly, the Sixth Claim alleges employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, which again is relevant to those defendants who played a part in Martin's discharge; namely, Yarbrough, YES, and G&A.  (Compl. ¶¶ 74-76.)  Finally, Martin styles the Seventh Claim of his complaint as one for "damages" against the "corporate defendants," which accordingly implicates YES, G&A, and TALX, as those are the defendants Martin has identified as corporations. (Compl. ¶¶ 5-7, 77-79.)

### B.  Defendants' Responses To Martin's Initial Complaints

The various defendants have taken different tacks in responding to Martin's original and supplemental complaints.  Defendant EEOC filed a motion to dismiss the non-FOIA claims against it (the complaint's First and Eighth Claims) under Fed. R. Civ. P. 12(b)(6), arguing that Martin has failed to state a claim upon which relief can be

granted against the EEOC in its enforcement capacity. (EEOC Motion to Dismiss or in the Alternative for Summary Judgment ("EEOC Br."), ECF No. 20, at 14-20.)[6] The EEOC also moved for summary judgment on Martin's FOIA claim (which, as noted, was added via Martin's supplemental complaint as the Ninth Claim in this action). (*Id.* at 20-24.) Defendants G&A and TALX filed motions to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), arguing that because none of the events giving rise to Martin's claims against those entities took place in the District of Columbia, venue was improper in this Court. (G&A Motion to Dismiss ("G&A Br."), ECF No. 9; TALX Motion to Dismiss ("TALX Br."), ECF No. 13.)[7] These parties additionally argued that, if the Court decided not to dismiss Martin's claims, it should at least order that the case be transferred to the Western District of Texas pursuant to 28 U.S.C. § 1406. (G&A Br. at 9-10; TALX Br. at 7-8.) Finally, Defendants YES and Yarbrough answered the complaint on December 28, 2012, largely denying the allegations (including the allegation that this Court was the proper venue for Martin's claims), and asserting a counterclaim under Texas Education Code § 11.161, which provides that a party may recover costs and attorney's fees incurred in defending a frivolous lawsuit.

---

[6] In its motion, the EEOC also postulated that Martin may have also intended to assert a Title VII claim and a claim for damages against it, and moved to dismiss these claims for lack of subject matter jurisdiction. (EEOC Motion to Dismiss or in the Alternative for Summary Judgment ("EEOC Br."), ECF No. 20, at 6-8.) However, the Court finds that Martin's Title VII and damages claims (the sixth and seventh claims of the complaint) are not addressed to the EEOC, and therefore the Court need not address the EEOC's arguments against these claims.

[7] Although G&A and TALX filed separate motions, both defendants are represented by the same counsel and the substance of each motion is substantially the same.

(Defendants YES and Yarbrough's Original Answer, Affirmative Defenses, and Counterclaim ("YES Answer"), ECF No. 7, ¶¶ 3, 25.)[8]

## C. Martin's Corrected Supplemental Complaint And Defendants' Supplemental Responses

On April 15, 2013, Martin filed a second supplemental complaint, which he styled as a "Corrected Supplemental Complaint" ("Corr. Supp. Compl."), ECF No. 28.) In this document, Martin restated both the facts and his previous claims, apparently in an attempt to augment and clarify the allegations in his prior pleadings, including providing additional allegations as to why venue was proper in the District of Columbia. After the Court allowed this supplemental pleading to be filed, G&A and TALX filed a motion for reconsideration of that decision, which the Court denied on June 10, 2013. (Memorandum Opinion and Order, ECF No. 33.) In its opinion denying reconsideration of the decision to permit the new complaint, the Court directed all defendants to supplement their pending motions to address any new allegations in Martin's second supplemental complaint. (*Id.* at 3-4.) G&A and TALX filed supplemental motions on July 1, 2013, in which they reiterated their arguments that this Court was not the proper venue for Martin's claims against them. (G&A Supplemental Motion to Dismiss ("G&A Supp. Br."), ECF No. 35; TALX Supplemental Motion to Dismiss ("TALX Supp. Br."), ECF No. 36.) The EEOC filed a supplemental motion to dismiss and for summary judgment on July 30, 2013, continuing to maintain that Martin has failed to state a claim upon which relief can be granted against the EEOC in its enforcement capacity. (EEOC Supplemental Motion to Dismiss or in the Alternative

---

[8] The YES Answer contains two paragraphs bearing number 25. The Court here refers to the paragraph 25 appearing on page 8 of the Answer.

for Summary Judgment ("EEOC Supp. Br."), ECF No. 37.)  All three of these motions have been fully briefed.

### D. Other Motions

There are several additional motions that are also outstanding in this case.  For example, Martin has filed two motions styled as "Motions for a More Definite Statement," one on February 19, 2013, and one on August 21, 2013.  (ECF Nos. 16, 39.)[9]  The briefs Martin has filed in regard to these motions are identical to opposition briefs Martin has filed as separate entries on the docket in relation to motions of the Defendants.  In addition, G&A and TALX have filed motions to seal and to strike portions of Martin's opposition to their supplemental motions to dismiss, on the grounds that Martin's brief includes information regarding settlement offers that is confidential under Federal Rule of Evidence 408.  (ECF Nos. 40, 41.)

## III.   LEGAL STANDARDS

Out of the morass of pending motions, the Court here addresses certain dispositive issues; *to wit*, whether Martin's substantive claims against the EEOC must be dismissed for failure to state a claim upon which relief can be granted; whether the EEOC is entitled to summary judgment on the FOIA claim; and whether the remaining claims against the other defendants should be dismissed or transferred for improper venue.  Consequently, the following basic legal standards apply.

---

[9] For reasons unknown, the EEOC chose to file an opposition (ECF No. 44) to Martin's second Motion for a More Definite Statement (ECF No. 39), even though Martin's motion is identical to Martin's opposition to the EEOC's supplemental motion to dismiss (*See* ECF Nos. 37, 38).  Martin then filed a reply to the EEOC's opposition (ECF No. 45), and along with the reply, an additional motion, styled as a "Cross Motion to Dismiss" (ECF No. 46).  Martin's Cross-Motion to Dismiss is identical to his aforementioned reply.

**A. Motion To Dismiss For Failure To State A Claim Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must comply with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requirement is meant to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

"Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting *Twombly*, 550 U.S. at 555). In other words, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Mere conclusory statements" of misconduct are not enough to make out a cause of action against a defendant. *See id.* Rather, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual

allegations." *Busby*, 932 F. Supp. 2d at 134 (citation omitted).  Although the court must accept as true the facts in the complaint, it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), nor is the court "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted).

## B. Summary Judgment With Respect To FOIA Claims

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also* Fed. R. Civ. P. 56.  In the FOIA context, a district court reviewing a motion for summary judgment conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under FOIA.  5 U.S.C. § 552(a)(4)(B); *see also In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92 (D.D.C. 2008) (same).  The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester.  *See Wills v. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008).  As such, entry of summary judgment in favor of an agency is only appropriate after the agency proves that it has "fully discharged its [FOIA]

obligations[.]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)).

### C. Motion To Dismiss, Or Transfer, For Improper Venue Under Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) "allows a case to be dismissed for improper venue." *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007); *see also* Fed. R. Civ. P. 12(b)(3). The plaintiff bears the burden of demonstrating that venue is proper. *Walden v. Locke*, 629 F. Supp. 2d 11, 13 (D.D.C. 2009). When "'considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor.'" *Walden*, 629 F. Supp. 2d at 13 (quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)). As a general rule, "a plaintiff must demonstrate proper venue with respect to each cause of action and each defendant." *Coltrane v. Lappin*, 885 F. Supp. 2d 228, 234 (D.D.C. 2012) (internal quotation marks and citations omitted).

Two different venue statutes govern Martin's claims against the non-EEOC defendants. First, Title VII's specific venue provision, 42 U.S.C. § 2000e-5(f)(3), governs Martin's claim against G&A, YES, and Yarbrough based on that statute. *See, e.g.*, *Taylor v. Shinseki*, 13-cv-1416 (JDB), 2014 WL 350261, at *2 (D.D.C. Jan. 31, 2014) (The Title VII specific venue provision "governs all Title VII claims and supersedes any other venue provision governing actions in federal court."); *Amirmokri v. Abraham*, 217 F. Supp. 2d 88, 89 (D.D.C. 2002) ("[I]n actions brought under Title VII, venue must be determined according to the statute's special venue provision[.]") The specific venue provision in Title VII states in relevant part that:

> [A]n action [under Title VII] may be brought [1] in any
> judicial district in the State in which the unlawful
> employment practice is alleged to have been committed, [2]
> in the judicial district in which the employment records
> relevant to such practice are maintained and administered, or
> [3] in the judicial district in which the aggrieved person
> would have worked but for the alleged unlawful employment
> practice[.]

42 U.S.C. § 2000e-5(f)(3). Second, because no specific venue statute applies to

Martin's breach of contract, FCRA, and Section 1983 claims, the general venue

statute—28 U.S.C. § 1391—controls these claims. *See, e.g.*, *Bullock v. Washington*

*Metro. Area Transit Auth.*, 943 F. Supp. 2d 52, 57 (D.D.C. 2013); *see also* 28 U.S.C. §

1391(a) ("Except as otherwise provided by law . . . this section shall govern the venue

of all civil actions brought in district courts of the United States[.]"). Section 1391(b)

states:

> A civil action may be brought in—
>
> **(1)** a judicial district in which any defendant resides, if all
> defendants are residents of the State in which the district is
> located;
>
> **(2)** a judicial district in which a substantial part of the events
> or omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the action is
> situated; or
>
> **(3)** if there is no district in which an action may otherwise
> be brought as provided in this section, any judicial district in
> which any defendant is subject to the court's personal
> jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

If the district where an action is brought does not comport with Section 1391 and

is thus improper, the court has discretion to determine whether it is in the interest of

justice to dismiss the action entirely or to transfer it to a district where venue is proper.

*Haley v. Astrue*, 667 F. Supp. 2d 138, 142 (D.D.C. 2009) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983)); *see also* 28 U.S.C § 1406(a).  "This Circuit favors transfer under § 1406(a) 'when procedural obstacles [such as . . . improper venue] impede an expeditious and orderly adjudication on the merits.'" *Sanchez v. U.S.*, 600 F. Supp. 2d 19, 22 (D.D.C. 2009) (quoting *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983)); *see also Atwal v. Lawrence Livermore Nat'l Sec., LLC*, 786 F. Supp. 2d 323, 326–28 (D.D.C. 2011).

## IV.    ANALYSIS

### A. Martin's Initial Complaint Fails To State A Claim Upon Which Relief Can Be Granted Against The EEOC

As noted above, two of the claims in Martin's initial complaint pertain to the EEOC alone:  the First Claim, which seeks mandamus relief, and the Eight Claim, which seeks a declaration that the EEOC violated the First Amendment and the "standards and limitations" clause of 42 U.S.C. 2000e-12(a).  (*See* Compl. ¶¶ 47-53, 80-82, 89-90.)  The EEOC has moved to dismiss both claims pursuant to Fed. R. Civ. P. 12(b)(6).  (EEOC Br. at 14-20.)

### 1. Martin's Claim For Mandamus Relief

In the First Claim of his original complaint, Martin requests that the Court "direct[] the EEOC to conduct investigation and conciliation using judicially approved nuetral [sic] principles of gender discrimination," and maintains that "[t]he Court has jurisdiction to grant [such] mandamus relief under 28 U.S.C. [§]1651(a)."  (Compl. ¶ 48.)  As an initial matter, this reference to the All Writs Act (28 U.S.C. § 1651) appears to be misplaced, for it is Section 1361—not Section 1651—of Title 28 that provides a

district court with jurisdiction over mandamus actions against federal agencies.  *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."); *see also Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("The All Writs Act is not an independent grant of jurisdiction to a court; it merely permits a court to issue writs in aid of jurisdiction acquired to grant some other form of relief.").[10]

In regard to the substance of Martin's claim, it is well-established that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).  "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Power v. Barnhart,* 292 F.3d 781, 784 (D.C. Cir. 2002)).  Mandamus relief "is hardly ever granted . . . [because] even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary."  *In re Cheney,* 406 F.3d 723, 729 (D.C. Cir. 2005) (*en banc*).

In moving to dismiss Martin's mandamus claim, the EEOC argues that Martin's allegations fail to satisfy any of the prerequisites for mandamus relief.  First, the EEOC asserts that Martin has failed to demonstrate a clear right to the relief he seeks, or any duty to act on the part of the EEOC, because the EEOC's decision on how to investigate a claim is wholly a matter of agency discretion.  (EEOC Brief in Support of Motion to

---

[10] In his second supplemental complaint (ECF No. 28) and in his Memorandum in Opposition to EEOC's Motion to Dismiss (ECF No. 27), Plaintiff appears to acknowledge his mistake and invokes Section 1361, rather than Section 1651, as the basis of the Court's jurisdiction over his mandamus claim.  (*See* Corr. Supp. Compl. at 3, 13; Pl. Opp. at 8, 31-33, 36, 44.)

Dismiss ("EEOC Br."), ECF No. 20-1, at 15.)  Second, the EEOC argues that Martin

has an adequate remedy at law; namely, a lawsuit against his former employer and any

other individual responsible for the alleged discrimination against him.  (*Id*. at 16.)  In

response, Martin argues that the EEOC's duty to investigate claims in a manner

consistent with its own internal practices is non-discretionary and that there is evidence

that the EEOC departed from such practices.  (Plaintiff's Memorandum in Opposition to

EEOC's Motion to Dismiss ("Pl. Opp."), ECF No. 27, at 30-31.)

     Martin has failed to establish that the EEOC has a "duty to act" in the manner

Martin requests.  Although it is true that Title VII provides that the EEOC "shall make

an investigation" of an administrative complaint filed with the agency, 42 U.S.C.

§ 2000e-5(b), this is not a case in which there was a failure to investigate in accordance

with that statutory duty; indeed, all parties in this case acknowledge that the EEOC

investigated Martin's complaint.  The dispute here is clearly over the *manner* in which

that investigation was carried out.  But Title VII does not provide—and the Court is not

aware of—any specific parameters for how the EEOC must conduct an investigation.

Indeed, numerous federal courts have concluded that "the nature and extent of an EEOC

investigation into a discrimination claim is a matter within the discretion of that

agency."  *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (quoting *EEOC v. Keco

Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984)); *see also EEOC v. CRST Van

Expedited, Inc.*, 679 F.3d 657, 674 (8th Cir. 2012) (same); *EEOC v. California

Psychiatric Transitions, Inc.*, 725 F. Supp. 2d 1100, 1113 (E.D. Cal. 2010) (same).  The

fact that the scope of an EEOC investigation is wholly within the discretion of that

agency is dispositive of Martin's mandamus claim, because "[c]ourts do not have

authority under the mandamus statute to order a government official to perform a discretionary duty." *West v. Spellings*, 480 F. Supp. 2d 213, 217-18 (D.D.C. 2007) (citing *Swan v. Clinton,* 100 F.3d 973, 977 (D.C. Cir. 1996)).

The regulation Martin points to does not alter this conclusion. In his brief, Martin asserts that the EEOC's actions in investigating his claim violated 29 C.F.R. § 1601.21(e). (Pl. Opp. at 15-16, 22.) However, that regulation does not address the manner in which the EEOC must conduct an investigation; rather, it governs the procedure the EEOC must use to make a determination of "reasonable cause," which occurs only after an investigation has taken place. *See* 29 C.F.R. § 1601.21(a) (stating that the EEOC may make a determination of reasonable cause "after completing its investigation"); *see also EEOC v. Chicago Miniature Lamp Works*, 526 F. Supp. 974, 975 (N.D. Ill. 1981) ("[The] EEOC's determination of reasonable cause and the nature of its investigation are completely discretionary[.]"). Similarly, Martin cites to the EEOC's administrative decision in *Macy v. Holder* (Pl. Opp. at 22), but that case did not address the scope of an EEOC investigation. Rather, the question in *Macy* was whether "discrimination based on gender identity, change of sex, and/or transgender status is cognizable under Title VII[.]" *Macy*, 2012 WL 1435995, at *1. Martin has alleged no such claims in this case, and *Macy* is therefore inapposite.

In sum, Martin's claim for a writ of mandamus requiring the EEOC to reopen the investigation into his administrative complaint is a request for an order that relates to the agency's purely discretionary duties, and this Court is without authority to issue such an order. *See West*, 480 F. Supp. 2d at 217-18. Consequently, Martin's irst Claim

for Relief must be dismissed for failure to state a claim upon which relief can be granted.

### 2. Martin's Claim That The EEOC Violated The First Amendment

The Eighth Claim of Martin's complaint invokes 42 U.S.C. § 1983 to allege that the EEOC engaged in impermissible "claim splitting" with respect to his administrative complaint, and that that action violated the First Amendment and 42 U.S.C. § 2000e-12(a).[11] The EEOC argues that neither the Constitutional nor statutory provisions Martin cites provide a cause of action against the EEOC based on its handling of an employment discrimination investigation. (EEOC Br. at 19-20.)

The Court need not delve too deeply into this claim, as the law in this Circuit unambiguously holds that "no cause of action against the EEOC exists for challenges to its processing of a claim." *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997); *see also Feldstein v. EEOC*, 547 F. Supp. 97, 100 (D. Mass. 1982) ("[N]o cause of action can be stated against the EEOC directly under the Constitution."). Instead, the remedy for the EEOC's alleged improper handling of a discrimination charge is a lawsuit brought against the employer pursuant to 42 U.S.C. § 2000e-5(f)(1)(A). *Casellas*, 119 F.3d at 34. Martin has already availed himself of that remedy through the claims he has asserted against the other defendants. Notwithstanding his dissatisfaction with the way the EEOC handled his claim, Martin has failed to identify any viable cause of action against the EEOC. Hence, his claim for declaratory relief, purportedly brought under Section 1983 based on an alleged First Amendment violation, must also be dismissed for failure to state a claim.

---

[11] This provision of Title VII provides that EEOC rules must be promulgated in accordance with Chapter Five of the Administrative Procedure Act, 5 U.S.C. § 551-59.

## B. Summary Judgment In Favor Of The EEOC Is Warranted On Martin's FOIA Claim

As noted above, the crux of Martin's FOIA claim appears to be whether the EEOC properly invoked FOIA Exemption 5 to withhold certain materials in response to to Martin's FOIA request. (Supp. Compl. at 2.) Although Martin's supplemental complaint does not specify which documents Martin feels were wrongly withheld pursuant to Exemption 5, the EEOC's decision with respect to Martin's FOIA appeal (which is attached to the supplemental complaint) indicates that the EEOC invoked Exemption 5 to redact certain information from only one document related to Items 3 and 7 of Martin's FOIA request: a one page memorandum, dated April 30, 2012, from EEOC investigator Minerva Melendrares to Travis Hicks, the EEOC San Antonio Field Office Acting Director. (Supp. Compl. Ex. C; *see also* Defendant's Statement of Undisputed Material Facts, ECF No. 20-2, ¶ 12.) The EEOC redacted 15 lines from the section of the memo entitled "Recommendation for Closure" before disclosing the document to Martin. (*Id.*) Accordingly, Martin's FOIA claim hinges on whether the EEOC was justified in redacting this portion of the Melendrares memorandum. (*Id.* ¶ 15.)

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Along with more familiar litigation privileges such as the attorney-client privilege and work product privilege, Exemption 5 also protects documents subject to the "deliberative process" privilege—and it is that privilege that is at issue here. The purpose of the deliberative process privilege, "like the other privileges within Exemption 5, [is] to (1) protect agency employees providing

analysis and opinions to superiors; (2) protect against premature disclosure of policies; and (3) protect the public from the confusion of viewing preliminary and potentially inaccurate rationales for eventual agency action." *Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 43-44 (D.D.C. 2012). Moreover, Congress included a FOIA exemption for the deliberative process privilege "because the release of pre-decisional communications could jeopardize the candid and comprehensive considerations essential for agency decisionmaking." *Putnam v. U.S. Dep't of Justice*, 873 F. Supp. 705, 712 (D.D.C. 1995).

"The deliberative process privilege protects agency documents that are both predecisional and deliberative. We deem a document predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks omitted). For Exemption 5, as with all FOIA exemptions, "[t]he agency bears the burden of showing that a claimed exemption applies." *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 6 (D.C. Cir. 2014). Moreover, "[s]ummary judgment is warranted when the agency's affidavits 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* (quoting *Miller v. Casey,* 730 F.2d 773, 776 (D.C. Cir. 1984)).

In order to carry its burden of showing that Exemption 5 applies to the "Recommendation" portion of the Melendrares memorandum, the EEOC has included with its motion a declaration from Stephanie D. Garner, Assistant Legal Counsel for

FOIA Programs at the EEOC Office of Legal Counsel. (Declaration of Stephanie Garner ("Garner Decl."), ECF No. 20-3, ¶ 1.) Garner's declaration explains that the memorandum in question is one that an EEOC investigator sends to his or her office director as a matter of course, and that such a memorandum "contain[s] selected facts from the investigative record, an analysis of the evidence, and a recommended determination for each charge investigated." (*Id.* ¶ 12.) The director then issues a final determination, which is "self-contained and does not reference or incorporate the investigator's memorandum." (*Id.*) Finally, "[t]he Director may reject the recommended determination or any or all of the rationale for the investigator's recommendation." (*Id.*) In light of Garner's declaration, the EEOC argues that the recommendation section of Melendrares's memo is "by its nature . . . a predecisional document that contains deliberative material." (EEOC Br. at 23 (internal quotation marks omitted).)

In response, Martin argues that the EEOC cannot render a document predecisional merely by labeling it as such, and this is particularly so because "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position [on an issue]." (Pl. Opp. at 40 (quoting *Arthur Anderson Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotation marks omitted).)

While Martin is correct that an agency's bare designation of a document as "predecisional and deliberative" does not suffice to carry its burden of justifying the withholding of the document, he is wrong to reduce the EEOC's entire rationale for redacting a portion of the Melendrares memorandum to that single conclusory

statement. To the contrary, as set forth in the Garner declaration, the EEOC has here

explained the process through which the memorandum is created; specifically, that that

memorandum represents an individual case officer's *recommendation* to her director

about the disposition of that charge, that such recommendation does not bind the

director, and that it is not incorporated in any way into the final disposition of the

charge. (Garner Decl. ¶ 12.) This description easily satisfies the standard of a

document that reflects "'advisory opinions, recommendations, and deliberations

comprising part of a process by which governmental decisions and policies are

formulated, [or] the personal opinions of the writer prior to the agency's adoption of a

policy.'" *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010) (quoting

*Taxation With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981); *see also

Nat'l Sec. Archive v. CIA*, 859 F. Supp. 2d 65, 70 (D.D.C. 2012). Consequently, the

EEOC has carried its burden of showing that the memorandum in question was both

predecisional and deliberative.

Furthermore, while Martin is also correct that, in certain circumstances, an

agency's adoption of a document can strip that document of its otherwise-applicable

protection under Exemption 5, he has failed to identify *why* the disputed memorandum

in this case should be deemed qualified for such treatment. The reason that certain

adopted materials can lose their Exemption 5 protection is that "the public is vitally

concerned with the reasons which . . . supply the basis for an agency policy actually

adopted. These reasons, if expressed within the agency, constitute the 'working law' of

the agency[.]" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152-53 (1975).

Accordingly, "[c]ases that have addressed whether an agency informally adopted a

predecisional document generally have focused on whether the documents are used by an agency as secret law or working law." *Sec. Fin. Life Ins. Co. v. Dep't of Treasury*, CIV. 03-102 (SBC), 2005 WL 839543, at *7 (D.D.C. Apr. 12, 2005). In making such a determination, a court should consider "the function and significance of the document in the agency's decisionmaking process"; "the nature of the decisionmaking authority vested in the office or person issuing the disputed document"; and whether the document was "from [s]upervisors to [s]ubordinates, or [v]ice [v]ersa." *Taxation With Representation Fund*, 646 F.2d at 678-681.

Here, Martin neither alleges in his supplemental complaint nor argues in his opposition to the EEOC's motion that the Melendrares memorandum constitutes such "working law," and the evidence before the Court makes it clear that, based on the criteria the D.C. Circuit identifies, the memorandum does not qualify as such. First, the Garner declaration is careful to note that the memorandum is merely a recommendation to the director, and that it is not incorporated in any way into the agency's final decision. (Garner Decl. ¶ 12.) Second, the declaration is also clear that Melendrares herself had no decisionmaking authority regarding Martin's charge. (*Id.*) And third, the fact that the memorandum was from a subordinate to a superior means that it is more likely to fit into the deliberative process exemption than if it were the other way around. *See, e.g.*, *Cobell v. Norton*, 213 F.R.D. 1, 5 (D.D.C. 2003) ("[I]ntra-agency memoranda from 'subordinate' to 'superior' on an agency ladder are likely to be more 'deliberative' in character than documents emanating from superior to subordinate." (quoting *Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983)). Thus, taking into consideration the evidence presented in light of the relevant legal standards, the

Court concludes that the Melendrares memorandum was not the "working law" of the EEOC; consequently, the EEOC was fully justified in invoking the deliberative process exemption to redact the memorandum. Therefore, the Court will grant summary judgment in favor of the EEOC on Martin's FOIA claim.

## C. The Court Will Transfer The Remaining Claims To The Western District Of Texas – San Antonio Division

### 1. The District Of Columbia Is Not The Proper Venue For Martin's Employment-Related Claims

Defendants G&A and TALX have moved to dismiss all of the relevant claims against them, arguing that venue is improper in this Court and therefore the claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3). Alternatively, G&A and TALX ask the Court to exercise its discretion and, in the interest of justice, transfer Martin's claims against them to the Western District of Texas pursuant to 28 U.S.C. § 1406(a). These defendants argue that Martin has failed to allege any facts that would render the District of Columbia an appropriate venue under either the Title VII venue statute or the general venue statute. (*See* G&A Br. at 6-8; TALX Br. at 4-7.)

In opposing G&A and TALX's motions, Martin does not argue that he has alleged facts sufficient to satisfy the conditions of either venue statute. Rather, he bases his opposition on the theory that venue is proper in this district for his claims against the EEOC, and that because venue is proper for those claims, it is also proper for all of his other claims against all of the other defendants under the doctrine of "pendent venue." (Corr. Supp. Compl. ¶ 4.)

Setting aside for the moment the question of pendent venue, it is clear that Martin's non-EEOC claims cannot satisfy the applicable venue statutes on their own. As noted above, the specific venue provision of Title VII provides a plaintiff (who bears the burden of showing that venue is appropriate in a given district) three options for choosing an appropriate venue.  The first option is to bring a Title VII claim "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed."  42 U.S.C. § 2000e-5(f)(3).  Here, the allegedly unlawful employment practice underpinning the Title VII claim occurred in Texas—and in San Antonio specifically—while Martin was working at Higgs Academy.  (*See* Compl. ¶¶ 74-76.)  Thus, venue is not proper in the District of Columbia under this provision. Martin's second option would be to bring his Title VII claim "in the judicial district in which the employment records relevant to such practice are maintained and administered[.]"  42 U.S.C. § 2000e-5(f)(3).  Because Martin was employed at all times in Texas, it stands to reason that the employment records relevant to the allegations in his complaint are also maintained and administered in Texas.  Indeed, G&A has provided a Declaration attesting to that fact.  (*See* G&A Br. Ex. A (Declaration of Nancy Edwards) ("Edwards Decl."), ECF No. 9-1, ¶ 8.)  Martin, on the other hand, has said nothing in either his complaints or in his numerous other submissions to the Court regarding the presence of employment records in the District of Columbia.  Third and finally, Martin could have brought his claim "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]"  42 U.S.C. § 2000e-5(f)(3).  Martin has not made any allegation concerning where he might have worked if he had not allegedly been discriminated against in San

Antonio, Texas, nor has he pressed any argument that—but for the alleged discrimination he suffered at the hands of G&A—he would have been employed in the District of Columbia. And there is nothing in the record that even remotely suggests any connection between Martin and the District of Columbia such that it would be reasonable to think that alternative employment in this jurisdiction would have been the case. Martin has thus failed to carry his burden of showing that venue for his Title VII claim is appropriate in the District of Columbia.

Similarly, while the general venue statute that is applicable to Martin's breach of contract, FCRA, and Section 1983 claims is broader than the standard applicable to his Title VII claim, Martin has nonetheless still failed to allege facts showing that venue for these claims is appropriate in this district under any of the three possibilities outlined in 28 U.S.C. § 1391(b). To begin with, Martin acknowledges in his complaint that not all of the defendants reside in the District of Columbia (Compl. ¶¶ 5-8), and thus he cannot rely on 28 U.S.C. § 1391(b)(1), which allows an action to be filed in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Martin is also unable to take advantage of 28 U.S.C. § 1391(b)(2), which allows for venue in a district where "a substantial part of the events or omissions giving rise to [a] claim occurred." Martin's breach of contract claim is premised on a 2010 contract between Martin and G&A that was negotiated, entered into, and performed in San Antonio (Compl. ¶¶ 68-73; Edwards Decl. ¶ 5), and Martin alleges no facts linking his contractual relationship with G&A to this district. Similarly, Martin's FCRA and Section 1983 claims stem from G&A's reporting of his firing to TALX (Compl. ¶¶ 58, 61) but, again, the events giving rise to this claim

occurred at G&A's headquarters in San Antonio, *see* Edwards Decl. ¶ 8, and Martin has failed to include any facts in any of his three complaints that links his FCRA or Section 1983 claims to the District of Columbia. Consequently, far from showing that a *substantial* part of the operative events took place in this district, Martin has failed to allege that *any* of the events in question did. Finally, 28 U.S.C. § 1391(b)(3), which would authorize venue in a jurisdiction in which any defendant would be subject to the Court's personal jurisdiction, is applicable only if Martin can show that there is no other district in which his claims could have been brought. *See Murdoch v. Rosenberg & Assocs., LLC*, 875 F. Supp. 2d 6, 10 (D.D.C. 2012). Here, the claims apparently could have been brought in the Western District of Texas, where G&A, TALX, and Martin either reside or do business and where a substantial part of the events giving rise to Martin's claims *did* take place.

Notably, although defendants YES and Yarbrough did not seek to dismiss or transfer Martin's claims against them on the basis of improper venue, in light of the applicable venue statutes, Martin's claims against them fare no better. Indeed, for the reasons just discussed, the District of Columbia is not the proper venue for any of Martin's non-EEOC claims, including the Title VII and breach of contract claims that he has asserted against YES and Yarbrough.

Having determined that none of Martin's non-EEOC claims were properly brought in this district in their own right, the Court now turns to a consideration of Martin's "pendent venue" theory. The pendent venue doctrine is an exception to the general rule that "a plaintiff must demonstrate proper venue with respect to each cause of action and each defendant." *Coltrane*, 885 F. Supp. 2d at 234. Under the doctrine,

"when venue lies for *some* of a plaintiff's claims . . . pendent venue may allow the court to entertain other claims that are not properly venued in the court." *Id.* Generally, "[p]ursuant to pendent venue, federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued *and* the interests of judicial economy are furthered by hearing the claims together." *Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009). "The pendent-venue doctrine has received limited acceptance but is at least a recognized doctrine." *Gamboa v. USA Cycling, Inc.*, 2:12-CV-10051-ODW, 2013 WL 1700951, at * 4 (C.D. Cal. Apr. 18, 2013).

Martin argues at length that (1) all of his claims stem from "a common nucleus of operative fact"; (2) the EEOC is at the epicenter of those facts; and as a result, (3) venue is appropriate in the District of Columbia for all claims. (Corr. Supp. Compl. ¶¶ 13-22.) However, the doctrine of pendent venue is inapplicable to Martin's non-EEOC claims for several reasons. First, the Court's determination that Martin's claims against the EEOC must be dismissed (*see* Sections IV.A & IV.B, above) forecloses any rationale for exercising pendent venue here. It would hardly further the interests of judicial economy to allow Martin's other claims to remain in this district when the original basis for venue in the district no longer exists. Second, with respect to Martin's Title VII claim, it is well-established that "[w]here a special venue provision places venue in a specific district, such a provision controls venue for that claim, even where it arises from a common nucleus of operative fact as a properly situated claim." *Sierra Club*, 623 F. Supp. 2d at 37. Put differently, courts will not apply the pendent venue doctrine to defeat Congress's intention that certain types of claims be heard in

specific places. *See Jyachosky v. Winter*, CIV.A.04-01733(HHK), 2006 WL 1805607, at *4 n.3 (D.D.C. June 29, 2006) (noting in the Title VII context that "[w]here, as here, Congress has clearly limited the scope of venue, the court is compelled to abide by such restrictions."). Thus, regardless of any common nucleus of facts or considerations of judicial economy, pendent venue cannot be applied to Martin's Title VII claim; rather, that claim must satisfy the conditions of the Title VII venue provision.

Finally, even if Martin's EEOC claims continued, the Court would decline to invoke pendent venue over Martin's non-Title VII, non-EEOC claims, because no common nucleus of fact exists between those claims and Martin's claims against the EEOC. Martin's EEOC claims appear to be premised exclusively on shortcomings that Martin perceives regarding the way the EEOC processed his complaint. Martin's other claims, by contrast, arise from assertions of discrimination with respect to the facts surrounding his employment and subsequent firing. There is almost no overlap between the facts that would be necessary for Martin to prevail on his claims against the EEOC and those that would be necessary for him to prevail on his other claims, such that evidence showing that the EEOC had failed to adhere to its own standards in processing Martin's charge would have no bearing on the merits of his other claims, and vice versa. *Cf. Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 29 (D.D.C. 2009) (finding, in the context of pendent jurisdiction, that there was no common nucleus of operative facts where the facts needed to prove two separate claims did not overlap). Accordingly, even if the EEOC claims survived, the Court would not employ the pendent venue doctrine with respect to any of Martin's other claims.

In short, Martin has failed to allege or identify any facts from which the Court can conclude that venue is proper in the District of Columbia for any of Martin's claims under either Title VII's specific venue statute or the general venue statute. Instead, Martin has placed all his eggs in the "pendent venue" basket—a theory that is manifestly unavailing for the reasons explained above. Consequently, this Court concludes that the District of Columbia is not an appropriate venue for Martin's claims against G&A, TALX, YES, or Yarbrough.

Finally, having concluded that the claims against these defendants cannot go forward in this district, the Court must also decide whether those claims should be dismissed, as G&A and TALX urge, or transferred. Section 1406 of Title 28 directs that, when venue is improper, the district court that has the case "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Although the decision to transfer or dismiss is committed to the sound discretion of the district court, the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Ellis-Smith v. Sec'y of Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)). "This is especially true when the plaintiff files a complaint *pro se.*" *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009). However, "[b]efore transferring [an] action, the court must also ensure that the defendants are subject to personal jurisdiction in the transferee forum." *James*, 639 F. Supp. 2d at 15. In addition, "[i]n determining whether it is in the interest of justice to transfer a case, [a court should consider] whether transfer

would prejudice Defendant's position on the merits." *McQueen v. Harvey*, 567 F. Supp. 2d 184, 188 (D.D.C. 2008).

Here, the Court concludes that the proper resolution is to transfer the remaining claims in the case, including those against YES and Yarbrough as well as those against G&A and TALX, to the Western District of Texas – San Antonio Division. As noted above, essentially all of the relevant events in the case took place in San Antonio; thus, that district would be an appropriate venue for Martin's claims under either the Title VII or general venue statutes. Moreover, each of the defendants allegedly resides in or does business in San Antonio (*see* Compl. ¶¶ 4-7), and each is therefore subject to personal jurisdiction in that district. *See Cook v. Pride Petroleum Servs., Inc.*, 3 F. Supp. 2d 759, 760 (S.D. Tex. 1998) (defendants that do business in the Southern District of Texas are subject to jurisdiction in that district) (citing Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (2013)). Finally, G&A and TALX have not provided any reason why they would be prejudiced if this case was transferred—rather than dismissed—and indeed they admit that a transfer to San Antonio "is appropriate." (G&A Br. at 9; TALX Br. at 7.) The Court likewise does not discern any prejudice to YES and Yarborough from a transfer. Accordingly, the Court finds that transferring the remaining claims in this matter to the Western District of Texas – San Antonio Division is appropriate and is in the interest of justice.

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

DATE: February 24, 2014